UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JENNIFER LYNNE CARVER | CIVIL ACTION |
| VERSUS | NO. 25-1789 |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | SECTION: N |

**ORDER AND REASONS**

Before the Court is the Second Motion to Dismiss for Lack of Subject Matter Jurisdiction, and in the Alternative, Failure to State a Claim by Defendant the United States Department of Housing and Urban Development.[1] Plaintiff Jennifer Lynne Carver filed an opposition to the motion,[2] and HUD filed a reply.[3] The Court ordered supplemental briefing to address whether Carver has Article III standing,[4] which the parties provided.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order and Reasons granting HUD's motion to dismiss because Carver lacks Article III standing.

## I. Background

Carver filed this action against HUD due to the agency's handling of her administrative complaints regarding allegedly dangerous housing conditions, inspection irregularities, and problems with the Housing Choice Voucher program.[6]

---

[1] Rec. Doc. 25.
[2] Rec. Doc. 26.
[3] Rec. Doc. 27.
[4] Rec. Doc. 28.
[5] Rec. Docs. 29, 30.
[6] Rec. Doc. 24.

HUD is a federal agency that administers federal housing programs, including, as relevant here, oversight and complaint-review functions relating to the Housing Choice Voucher program pursuant to Section 8 of the U.S. Housing Act of 1937.[7] Carver was a participant in the Housing Choice Voucher Program through the Jefferson Parish Housing Services Development District ("JP Housing Services") from approximately 2017 through 2023.[8] Carver alleges that she entered into a residential lease agreement for a property in River Ridge that became hazardous due to water intrusion, elevated moisture levels, mold contamination, deteriorating walls and ceilings, and structural deficiencies.[9] Carver reportedly sought assistance from JP Housing Services to no avail. She alleges that multiple inspections failed to adequately document or address the dangerous conditions.[10] She thus obtained an independent third-party inspection documenting widespread water damage, elevated moisture levels within walls, and mold conditions around HVAC air intakes.[11]

Not satisfied with the response from JP Housing Services, Carver submitted complaints and supporting documentation to HUD.[12] HUD informed Carver that, due to the volume of information she submitted, HUD would not fully review the materials.[13] HUD referred her complaint back to JP Housing Services for additional inspection.[14] Carver's property passed a subsequent inspection conducted through JP

---

[7] *Id.* at 1.
[8] *Id.* ¶ 7.
[9] *Id.* ¶¶ 8-9.
[10] *Id.* ¶¶ 8-9.
[11] *Id.* ¶ 12.
[12] *Id.* ¶ 13.
[13] *Id.* ¶ 14.
[14] *Id.* ¶ 15.

Housing Services.[15] HUD then informed Carver that this inspection superseded her submitted documentation and it would not conduct any further administrative review.[16] Carver alleges that she ultimately lost her housing assistance and stability "without meaningful administrative review of her complaints."[17] She alleges HUD violated the Administrative Procedure Act and denied her procedural due process. She seeks declaratory and injunctive relief concerning HUD's administrative review procedures.

## II. Article III Standing

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the United States Constitution and Congress.[18] Therefore, the Court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[19] Federal courts' subject-matter jurisdiction is restricted to "Cases" and "Controversies."[20] This constitutional limitation on judicial power ensures that courts do not encroach on the powers of the political branches in our system of government.[21]

"[A] lawsuit is not a 'Case[ ]' or 'Controvers[y]' unless the plaintiff can prove that [she] has standing to bring suit.[22] To have standing, a plaintiff must show that she has suffered an injury in fact "fairly traceable" to the defendant's conduct which

---

[15] *Id.* ¶ 16
[16] *Id.* ¶ 17.
[17] *Id.* ¶ 19.
[18] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[19] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).
[20] *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022) (citing U.S. Const. art. III, § 2).
[21] *Id.*
[22] *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

a favorable ruling would likely redress.[23] At the pleading stage the plaintiff must "clearly allege facts demonstrating each element" of standing.[24] The plaintiff must make this showing for each claim being made and for each form of relief being sought.

Thus, Carver must establish each element of standing for each claim she asserts and each form of relief she seeks. She satisfies the first element, injury in fact. Carver alleges that she lost her housing assistance and housing stability.[25] Those are concrete, particularized, and actual injuries. The standing inquiry therefore turns not on whether Carver was injured, but on whether her injuries are fairly traceable to HUD and whether the relief she requests would redress them. On both, she fails to make the necessary showing.

**A. Traceability of the Alleged Injuries to HUD's Conduct**

To satisfy the second element of standing, Carver must show that her injuries are fairly traceable to HUD's conduct, and not "the result of the independent action of some third party not before the court."[26] "[T]he presence ... of third-party links in [a] causal chain [can] independently corroborate that [a party's] claim of causation is 'entirely speculative' and insufficient for standing."[27] Thus, the operative question is whether HUD's conduct was the cause of the injuries Carver suffered.

Carver alleges limited action by HUD. First, "HUD received substantial evidence regarding unsafe housing conditions and administrative irregularities but

---

[23] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).
[24] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified).
[25] Rec. Doc. 24 at 3.
[26] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (citation modified).
[27] *Robbins v. United States Dep't of Hous. & Urb. Dev.*, 72 F. Supp. 3d 1, 7 (D.D.C. 2014) (quoting *Fla. Audubon Soc. v. Bentsen,* 94 F.3d 658, 670 (D.C.Cir.1996)).

failed to meaningfully review the evidence."[28] Second, HUD informed Carver that the documentation she submitted "would not be fully reviewed due to the volume of information submitted" and referred her complaint back to JP Housing Services.[29] Third, "HUD informed Plaintiff that the local inspection findings superseded Plaintiff's submitted documentation and that no additional administrative review would be conducted."[30]

Each of these allegations describes the same conduct: HUD declined to override, or to conduct its own review supplanting, the local inspection determinations made by JP Housing Services. Carver faults HUD not for having taken some action of its own that injured her, but for having refused to displace the determinations of the local authority. That distinction is dispositive, because the injuries Carver identifies—the loss of her housing assistance and housing stability—were allegedly produced by JP Housing Services's conduct, not HUD's.[31] By Carver's own allegations it was JP Housing Services that inspected the unit and passed it under the housing quality standards,[32] and JP Housing Services that terminated her participation in the Housing Choice Voucher program.[33] HUD's role in causing her injury is not just speculative but nonexistent.

The Housing Choice Voucher program operates in two tiers. HUD funds the program and establishes the governing standards, but the individualized

---

[28] Rec. Doc. 24 at 1.
[29] *Id.* ¶¶ 14-15.
[30] *Id.* ¶ 17.
[31] *Id.*
[32] *Id.* ¶ 16.
[33] Rec. Doc. 24 at 1-3; Rec. Doc. 26 at 5.

determinations of which Carver complains—inspecting the unit, determining its compliance with the housing quality standards, and continuing or terminating a participant's assistance—are committed by statute and regulation to the local public housing authority.[34] Carver acknowledges that her voucher was "administered locally through [JP Housing Services]" throughout the relevant period.[35] HUD does not make the individualized determinations that caused Carver's loss of assistance.[36] Those determinations belonged to JP Housing Services, an entity distinct from HUD that is not before this Court.

A court confronting a similar Section 8 dispute reached precisely this conclusion. In *Robbins v. HUD*, the plaintiff alleged that HUD's handling of her complaints and failure to intervene in her dispute with her local housing authority had escalated her path to homelessness. The court held that her injuries were not traceable to HUD, because "HUD merely funds the Section 8 program but does not make individualized determinations such as the ones about which [the plaintiff] complains,"[37] and "[t]he [local public housing authority] is ultimately responsible for administering the program and a participant's status in it."[38] So too here. Because the loss of Carver's housing assistance resulted from the independent determinations of JP Housing Services rather than from any conduct of HUD, her injuries are not

---

[34] 42 U.S.C. § 1437f; 24 C.F.R. §§ 982.1, 982.51; *see also Robbins*, 72 F. Supp. 3d at 3-4 (describing separate responsibilities of HUD and state and local housing authorities in Section 8 federal housing program).
[35] Rec. Doc. 24 at 4.
[36] 42 U.S.C. § 1437f(o)(6)-(8).
[37] *Robbins*, 72 F. Supp. 3d at 7.
[38] *Id. (*citing 24 C.F.R § 982.51.).

fairly traceable to the defendant before the Court, and she has not carried her burden on the traceability requirement of standing.

**B. Redressability of the Requested Relief**

Even if Carver could establish traceability, she still fails to establish standing because a favorable judgment would not redress her alleged injury.

Redressability asks, for each form of relief a plaintiff seeks, whether it is likely, as opposed to merely speculative, that the plaintiff's injury will be remedied by the relief she requests.[39] Here, Carver vaguely seeks declaratory and injunctive relief concerning HUD's administrative review procedures. In Count I (Administrative Procedures Act), she alleges the agency arbitrarily failed to review her evidence of unsafe housing conditions.[40] In Count II (Procedural Due Process), she alleges HUD violated her protected property interest in the voucher program by refusing to intervene or grant her a meaningful administrative review before her housing assistance was terminated.[41]

Even setting aside the prospective nature of the relief sought for a past injury, an order running to HUD could not redress Carver's injury, because HUD lacks the authority to provide that remedy, *i.e.*, restoration of her voucher, a hearing, or a change in the determinations that ended her participation. Those matters are committed to the local public housing authority.[42] As the court explained in *Robbins*, "[i]t is substantially more difficult for a [plaintiff] to establish redressability where

[39] *Lujan*, 504 U.S. at 561.
[40] Rec. Doc. 24 at 3-4.
[41] *Id.*
[42] 42 U.S.C. § 1437f; 24 C.F.R. §§ 982.1, 982.51.

the alleged injury arises from the government's regulation of a third party not before the court," and HUD "cannot mandate that the [public housing authority] provide [a participant] with housing vouchers" or compel it to afford an informal hearing.[43] Because JP Housing Services—not HUD—administers the program and determines a participant's status in it, the relief Carver seeks against HUD would leave her injury unredressed.

Carver accordingly cannot establish redressability, and for this reason, as well as for her failure to establish traceability, she lacks Article III standing to pursue her claims against HUD.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Second Motion to Dismiss for Lack of Subject-Matter Jurisdiction, and in the Alternative, Failure to State a Claim[44] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint[45] is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 14th day of August, 2026.

Anna St John

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

---

[43] *Robbins*, 72 F. Supp. 3d at 7-8.
[44] Rec. Doc. 25.
[45] Rec. Doc. 24.